**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CONTINENTAL AUTOMOTIVE SYSTEMS, U.S., INC.,** | ) ) | |
| **Plaintiff,** | ) | **No. 14 C 3731** |
| | ) | |
| **v.** | ) | **Judge Edmund Chang** |
| | ) | |
| **OMRON AUTOMOTIVE ELECTRONICS, INC.,** | ) ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Continental Automotive Systems US, Inc. ("Continental") has sued Schrader Electronics, Inc. in the Eastern District of Michigan for patent infringement. *Automotive Systems US, Inc. v. Schrader Electronics, Inc., et al.*, No. 2:11-cv-14525 (E.D. Mich.). The patent at issue involves a sensor manufactured by Schrader that measures tire pressure and sends that information to a receiver in the vehicle. The receiver is manufactured by Continental, Omron and others. In the wake of the district court's *Markman* ruling, Continental issued a Rule 45 subpoena to Omron, an innocent, non-party to the patent action. Omron is a direct competitor of Continental.

**A.**

The information that Continental seeks encompasses a wide variety of technical, proprietary information – specifically, technical specifications pertaining to how Omron's receivers process the information they receive from tire pressure sensors. Simply stated, the subpoena calls for the production of all "technical documents" "related to all of Omron's [tire pressure monitoring] receivers." (*Continental Memorandum* at 8) The subpoena also sought a witness to testify at a deposition regarding the operation of the receivers and the documents to be produced should that

prove to be necessary. Not surprisingly, Omron is unwilling to divulge this information to Continental, which, according to Omron, is its number one competitor in the industry. Expressing surprise at Omron's unwillingness to share its most valuable corporate asset with a competitor, Continental filed the instant motion to compel.

Continental submits that the information it seeks is "indisputably relevant" to its patent infringement claim against Schrader because "at least the '019 patent contains claims that implicate functionality which may be executed by the . . . receiver or related components (as opposed to the sensor itself)." (*Continental Memorandum* at 5). The Memorandum does not go beyond this *ipse dixit* and cites nothing in support of it. Indeed, only one case is cited in the Memorandum, *Purzel Video GmbH v. Does 1-108,* 2013 WL 6797364, 9 (N.D.Ill.2013), and that for the general proposition that the mere burden of finding and producing documents is not considered undue. (*Memorandum* at 8). Apart from the fact that "general propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting), relevancy, not burden, is the focus of Omron's objection to the subpoena.

Omron contends that Judge Murphy's claim construction ruling "eviscerated" Continental's claim for direct patent infringement against Schrader because a tire pressure monitor sensor located in a car wheel cannot generate an alarm detectable by human beings, as the patent requires. (*Memorandum* at 1– 2, 7 *et. seq.*). Consequently, Omron argues, Schrader could not be a direct infringer, and  absent direct infringement there cannot be indirect patent infringement. (*Memorandum* at 8). Proceeding from this premise, Omron concludes that since the claims against Schrader "cannot be proven as a matter of law," the information sought by Continental is simply not relevant. (*Memorandum* at 10).

2

At the hearing on its motion, Continental disagreed with Omron's interpretation of Judge Murphy's *Markman* ruling and Omron's bleak assessment of the continued viability of its patent infringement claim, which is now based on the theory that everyone who drives a car containing an Omron receiver and a Schrader tire pressure sensor is a direct infringer and Schrader is a contributory infringer. Omron's Memorandum contains an extended discussion of direct and indirect patent infringement and of the Michigan court's rulings. It cites a number of patent cases, including the Supreme Court's June 2, 2014 decision in *Limelight Network is, Inc. v. Akamai Technologies Inc.* (*Memorandum*, Ex. 10).

Continental conceded, as candor required, that if Omron's interpretation of patent law was correct that it would have no case, and any information sought from Omron would obviously then be irrelevant. And in that setting, the burden of compliance with Continental's subpoena would obviously exceed the benefit of production of the material sought. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir.2004). But Continental had a very different interpretation of *Limelight Network is, Inc.* and of the theory of indirect patent infringement.

What the oral argument showed was that a determination of whether Continental is entitled to the discovery it seeks from Omron – that is, whether it is relevant to a claim or defense in the Michigan litigation – is inextricably bound up with the merits of that litigation. *Cf.*, *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir.1987)( "a determination of relevance implicates the substantive law of patent validity and infringement.").

Under Fed.R.Civ.P. 45(f), an enforcing court may transfer a motion to the issuing court if the enforcing court finds there are "exceptional circumstances." The Advisory Committee note to Rule 45(f) provides guidance on what might constitute such circumstances:

3

The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Delving into the merits of the litigation in the Eastern District of Michigan constitutes disrupting that court's management of the underlying litigation.   A ruling here may turn out to be inconsistent with the rulings in the Michigan case.  *See Wultz v. Bank of China, Ltd.*,  2014 WL 2257296 (D.D.C. 2014); *Chem-Aqua, Inc. v. Nalco Co.,*  2014 WL 2645999 (N.D.Tex. 2014)*; FTC v. A+ Fin. Ctr., LLC,* 2013 WL 6388539 (S.D.Ohio  2013). In this case, ordering compliance with Continental's subpoena involves far more than merely ordering discovery of matters that are connected perhaps only loosely to the case, pending elsewhere.  Generally, in that context, courts must be "especially hesitant to pass judgment on what constitutes relevant evidence." *Truswal Systems Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1212 (Fed.Cir.1987). Rather, it would involve determining a question that lies at the heart of the Michigan litigation – namely whether Continental even has a viable patent case against Schrader after the *Markman* ruling. Accordingly, this matter is transferred to the issuing court for resolution.

**B.**

If this issue were not present, I would deny Continental's motion.   Rule 45 contains important provisions to protect the recipient of a subpoena from undue burden or expense, invasion of a privilege, or disclosure of protected material.  *S.E.C. v. Hyatt,* 621 F.3d 687, 694 (7th Cir. 2010). Under Rule 45(d)(3)(A)(iii), a court must quash a subpoena that requires disclosure of protected

4

information.  One can imagine no more harmful type of disclosure of technical information of the type sought here than to a direct competitor.  It's a blatantly obvious point.  *See Am. Standard Inc. v. Pfizer Inc*., 828 F.2d 734, 741 (Fed.Cir. 1987)(courts presume that disclosure to a competitor is more harmful than disclosure to a  non-competitor); *Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22, 25 (D.D.C. 2011); *In re Vitamins Antitrust Litigation*,  267 F.Supp.2d 738, 741-42 (S.D.Ohio 2003); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 537-538 (C.D.Ill. 1991).[1]

Moreover, it has become apparent from discussions at the hearing that Continental has other sources from which it can obtain the information it actually needs for its litigation against Schrader, namely, from the automobile manufacturers. When questioned about these alternative sources, Continental's lawyers argued that only Omron would be able to understand and explain how its receiver worked in tandem with the Schrader tire pressure monitor.  Of course, there is no basis for this conclusion, and unsupported statements by lawyers whether in briefs, *United States v. Stevens,* 500 F.3d 625, 62 -629 (7th Cir. 2007); *United States ex rel. Feingold v. AdminiStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003); *Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir. 2006), or in oral argument, *In re: Payne*, 431 F.3d 1055, 1066 (7th Cir. 2005), don't count.

Common sense and human experience – which always have a role to play, *United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir.2009); Posner, How

---

[1] It is undisputed that the information sought by Continental is proprietary, confidential, and only distributed on a need to know basis. It is information not disclosed to the public or competitors. *See* Omron Memorandum, Ex. 10, Declaration of Brian Sample.

Judges Think at 116 (Harv. Univ. Press 2008) – strongly suggest that the major automobile companies who are the purchasers of the Schrader tire pressure monitor and the Omron receiver are ready sources of the information Continental says it needs to pursue its theory of the case against Schrader. It is certain that they know whether Omron receivers are combined with Schrader sensors in the cars they manufacture, and they would have an intimate knowledge of how the two function and interact. It is more than a reasonable inference that the automobile manufacturers employ skilled electrical engineers responsible for insuring the safe operation of a system that is an important safety component of the vehicles in which they are installed. To do so, they must have a detailed understanding of how the two function together.

Requiring Continental to pursue these alternative sources of information does not merely shift the burden from one nonparty to another, with no gain to either and equal burdens to both. In the context of this case, the nonparties are not fungible. The major automobile companies are not competitors of Continental. They certainly can provide certain of the information being sought and it is likely that they will be able to provide sufficient information that will satisfy Continental without requiring the blanket turnover of the core of Omron's proprietary information.

In the last analysis, the decision of whether to require a nonparty to provide information pursuant to subpoena, like all discovery disputes, falls within the extraordinarily broad range of discretion invested in judges by the Federal Rules of Civil Procedure. *Cf. Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Semien v. Life Insurance Co. of N.A.*, 436 F.3d 805, 813 (7th Cir. 2006). Discretion denotes the absence of a hard and fast rule. *Langnes v. Green*, 282 U.S. 531, 541 (1931); *Pruitt v. Mote*, 2006 WL 3802822 (7th Cir. 2006); *Rogers v. Loether*, 467 F.2d 1110, 1111-12 (7th Cir. 1972)(Stevens, J.). Thus, on virtually identical facts, two decision-makers can arrive at opposite

conclusions, both of which constitute appropriate exercises of discretion. *See United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008); *Johnson v. Daley,* 339 F.3d 582, 593-594 (7th Cir. 2003)("the district judge's substantial discretion...ensures inconsistency.").

Omron's overarching interest in protecting its confidential information from its most significant competitor counsels against an exercise of discretion that would result in the enforcement of the Continental subpoena. It is not a sufficient answer to say, as Continental does, that it is willing to enter into an appropriate protective order with an attorney's eyes only provision that would preclude disclosure to anyone other than counsel and experts.  Where, as here, there is an alternative source of the information being sought – and in the absence of a clear showing of relevancy – a competitor ought not be forced to take the risk that there could be of a violation of a protective order.

That risk is one that a *party* must, of necessity, endure.[2] But it is not one that a nonparty ought to be forced to take where the party seeking the information is its foremost competitor and there appear to be alternative sources of information. The inescapable reality is that once an expert – or a lawyer for that matter – learns the confidential information that is being sought, that individual cannot rid himself of the knowledge he has gained; he cannot perform a prefrontal lobotomy on himself, as courts in other contexts have recognized. *Cf. AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1205 (7th Cir. 1987). *See also BASF Corp. v. United States*, 321 F.Supp.2d 1373, 1380 (CIT 2004)("It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.").

---

[2] Even in that context, "[w]hen a party is concerned about the competitive misuse of confidential information and a protective order appears to be insufficient protection, the court must balance the risk of disclosure to competitors against the risk of damaging the claims or defenses of the party seeking access." *Isis Pharmaceuticals, Inc. v. Santaris Pharma A/S Corp.*,  2013 WL 3367575, 3 (S.D.Cal.2013).

To question the efficacy of a protective order in the context of a case like this is not in any way to question the integrity of counsel or, indeed, of the experts they plan to employ. *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405 (N.D.Ill. 2006) put it this way:

> We begin by crediting fully the sincere assurance that Autotech's in-house counsel will endeavor to abide by any attorneys-eyes-only protective order that is entered. But acceptance of that assurance marks the beginning and not the end of analysis. *Brown Bag Software,* 960 F.2d at 1471. As the D.C. Circuit said years ago, "the court does not in any way doubt the faithfulness of house counsel in endeavoring to abide by the terms of any protective order. The issue concerns not good faith but risk of inadvertent disclosure." *FTC v. Exxon Corp.,* 636 F.2d at 1350.[FN4] Just as "[i]nadvertence... is no respecter of its victims," *United States Steel,* neither is it a respecter of the integrity of those who fall prey to it.

*Id.* at 408

In *Litton Industries v. Chesapeake & Ohio Ry.,* 129 F.R.D. 528, 531 (E.D.Wis.1990), the court persuasively explained why, in the context of a case like this involving a demand by a competitor for confidential information, a protective order may not sufficiently eliminate the risk of real harm:

> Once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories. The information obtained ... will be added to the expert's repository of other information for possible future use. Even with stern sanctions for unauthorized disclosure, how does one practically police a protective order? If the expert is called upon two years after this litigation to assist a potential competitor in structuring its business, will he really be able to compartmentalize all he or she has learned and not use any of the information obtained ...?

> "There is a constant danger inherent in disclosure of confidential information pursuant to a protective order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a nonparty is sought."

*Id.,* at 531. *Accord U.S. Gypsum Co. v. Lafarge North American, Inc.*, 2004 WL 816770, *1

8

(N.D.Ill. 2004); *Greater Rockford Energy and Technology Corp.,* 138 F.R.D. at 538; *Stanley Works v. Newell Co.*, 1992 WL 229652, *5 (N.D.Ill. 1992).

There is then a real and appreciable risk either that the lawyers or the experts in this case will, at some point in the future, be in a situation where the information obtained under Continental's proposed protective order could not help but be utilized by them and in a way that could have significant adverse consequences for Omron's business. While that risk is inherent in any case, it is one that ought not to be taken where one competitor seeks the confidential, proprietary information of another competitor who is not a party to the litigation and the most serious questions are raised as to the relevancy of the information and there are alternative sources from which the information sought can be obtained elsewhere.

## CONCLUSION

For the reasons discussed in the Memorandum Opinion and Order of 6/20/14, pursuant to FRCP 45(f), this case should be transferred to Judge Murphy in the Eastern District of Michigan. To the extent that I do not have jurisdiction to transfer the case, I recommend that Judge Chang do so.  Enter Memorandum Opinion and Order. Alternatively, the motion is denied.

**DATE:** 6/20/14                    **ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

9